# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

CHRISTOPHER SMITH,

    Petitioner,

    -vs-

WARDEN, Lebanon Correctional
  Institution,

    Respondent.

Case No. 1:10-cv-841

District Judge Sandra S. Beckwith
Magistrate Judge Michael R. Merz

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS; DECISION AND ORDER

This habeas corpus case is before the Court on Petitioner Christopher Smith's Objections (Doc. No. 18) to the Magistrate Judge's Report and Recommendations (Doc. No. 17) which recommended dismissal of the Petition with prejudice. Mr. Smith has also filed two additional post-Report motions (Doc. Nos. 19 & 20). The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

Mr. Smith did not plead separate grounds for relief in the Petition, but the Report attempted to extract and analyze all of his claims, including (1) insufficient evidence, (2) failure to merge allied offenses of similar import, (3) ineffective assistance of trial and appellate counsel, (4) prosecutorial misconduct in failing to reveal before the hearing on the motion to suppress all the evidence which would be presented at trial, (5) seizure of evidence in violation of the Fourth Amendment, and (6) an Equal Protection claim under *Batson v. Kentucky*, 476 U.S. 79 (1986).

In his Objections, Mr. Smith restates his claims as follows:

1. The conviction is against the manifest weight of the evidence.

2. Insufficient evidence.

3. The jury clearly lost it's [sic] was and created a manifest miscarriage of justice.

4. The States erred in its selection of a all white Jury [and] thereby violated the Equal Protection Clause.

5. Forensic expert Larry Dehus offered credible support for Petitioner.

(Objections, Doc. No. 18, PageID 298.)

## Manifest Weight/Miscarriage of Justice

In his Objections, Mr. Smith raises a new claim[1] that the verdict is against the manifest weight of the evidence. (Claim One, *supra*.) His claim that the jury lost its way, creating a miscarriage of justice (Claim Three, *supra*.) is another way of stating his manifest weight claim under Ohio law.

A claim that a verdict is against the manifest weight of the evidence does not state a claim under the United States Constitution. In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997), the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence. It held:

---

[1] New for this federal habeas corpus proceeding. The claim was litigated in the state court of appeals.

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

> In considering the claim that the conviction was against the manifest

> weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

485 N.E. 2d at 718, ¶3 of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31(1982).

To be completely clear, this Court has no authority to grant habeas corpus relief on the basis of a manifest weight of the evidence claim.

## Insufficient Evidence

Mr. Smith presented a claim of insufficient evidence in his Petition which was analyzed in the Report (Doc. No. 17, PageID 285-289). He repeats that claim in his Objections as Claim 2. He adds to it Claim Five, that Larry Dehus provided credible evidence.

In the Report, the Magistrate Judge analyzed the evidence presented which showed that the crimes of attempted murder and aggravated robbery with a firearm were committed and Mr. Smith does not dispute that there was sufficient evidence that those crimes actually happened. His claim is there was insufficient evidence to prove he was the perpetrator of those crimes.

The test for sufficient evidence as set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt . . . ." There was testimony that the blood on Petitioner's shoes was that of the victim. The state court of appeals found

> Smith had Trieschman-Hooker's blood on his shoe when he was stopped by Officer Smith. He offered no credible support for his theory that the blood either had been planted on his shoes or had transferred there accidentally.

A federal habeas court is required to defer to findings of fact made by the state courts unless the petitioner shows by clear and convincing evidence that the finding is erroneous. To prove that the finding is erroneous, Mr. Smith points to the testimony of Larry Dehus that the blood on the shoe "did not appear to be from spatter." Because it was certainly the victim's blood (as shown by DNA evidence) and the victim certainly bled when she was shot, Petitioner had to find some explanation other than spatter. But Mr. Dehus' opinion that the blood is not spatter is not even in conclusive scientific form. He did not testify to a scientific certainty or even a probability that the blood was not from spatter; rather he said it **appeared** not to be from spatter. That is equivocal, not scientifically positive testimony. And even if his opinion had been stronger, the jury was not obliged to believe him, particularly since the prosecutor undermined his scientific credentials on cross-examination.

Petitioner's alternative theory is that Lieutenant David Schaefer planted the blood on the shoe. He rests this theory entirely on his claim that Schaefer had an opportunity to plant the blood because he was alone with the shoe. He offers no testimony from anyone at trial that the blood on the shoe looked as if it had been planted, e.g., by being squeezed from a rag or dripped from a vial, or whatever. Dehus' testimony is merely a weak negative – it doesn't look to him like spatter.

-5-

Dehus offered no testimony about what it did look like, about what a plausible method of depositing the blood on the shoe would have been. Dehus certainly did not opine that it looked to him as if it had been deliberately placed on the shoe by anyone.

Petitioner's Claim Five about the credibility of Dehus' testimony is related to his insufficient evidence claim. Mr. Smith thinks Dehus' testimony is very credible, so credible that it cannot be overcome by the other evidence. But the credibility of witnesses is for the jury to decide. It is extremely rare for there to be a witness who is so credible that they must be believed, whose evidence is so persuasive that a jury that believed otherwise would be plainly wrong. This is not that sort of case. As noted above, the Dehus testimony on which Petitioner relies is a weak negative – the blood does not appear to be a spatter. Neither Dehus' credentials nor the form of his testimony are so strong as to preclude the jury from finding Petitioner guilty despite Dehus' testimony. As noted in the Report, there is ample additional evidence, including the blood on Smith's shoe, from which the jury could have concluded he was the perpetrator.

**The Equal Protection Claim**

The Magistrate Judge analyzed Mr. Smith's Equal Protection claim in the original Report (Doc. No. 17, PageID 294-296). The gravamen of the claim as it was presented to the Ohio trial and appellate courts was that the State had acted in a racially discriminatory manner when it excused an African-American venireman, Mr. Madaris. The reason given by the prosecutor for excusing Mr. Madaris was that he believed that he had been wrongly stopped by a police officer without any good grounds. Mr. Smith also believed and was expected to testify that he believed he had been wrongly

stopped, without reasonable suspicion, by Officer Clayton Smith. The reason is in itself race neutral and no evidence was offered to prove it was pretextual. On that basis the state courts overruled the Equal Protection claim and the Magistrate Judge found their decision was not an objectively unreasonable application of the relevant Supreme Court case law, *Batson v. Kentucky*, 476 U.S. 79 (1986); *Purkett v. Elem*, 514 U.S. 765 (1995); *Hernandez v. New York*, 500 U.S. 352 (1991).

In his Objections, Mr. Smith says "Who cares about Juror Madaris. He's not the real point here." (Objections, Doc. No. 18, PageID 301.) Rather he objects "because here in this case Whites are a cognizable racial group! Flat out. THAT'S MY OBJECTION! The State shown [sic] discrimination when choice of 10 white jurors was going to be their only key for a wrongfull [sic] conviction." *Id.*

A criminal defendant can only establish an Equal Protection claim by showing that a member of a racially cognizable class has been **excluded** from his jury. The defendant does not need to be a member of the same racially cognizable group to make his claim. *Powers v. Ohio*, 499 U.S. 400 (1991). But the *Batson* rule prohibits the **exclusion** of jurors on the basis of race. It does not prohibit a jury made up of a majority of one race or another so long as purposeful racial discrimination has not been used to exclude someone. As noted in the Report, a finding of lack of discrimination is a finding of fact which must be upheld unless shown to be clearly erroneous. *Hernandez; supra; United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990). Mr. Smith has not met that burden. His alternative Equal Protection claim is not cognizable under the Constitution.

**Additional Issues**

In his Objections, Mr. Smith raises several points aside from his five claims. They will be treated here from sake of completeness.

Mr. Smith argues that "[t]he Sixth Circuit has recognized the Fourth Amendment to support federal claims of malicious prosecution when plaintiffs accuse defendants of wrongfully investigating, prosecuting and convicting them." (Objections, Doc. No. 18, PageID 306, citing *Spurlock v. Satterfield*, 167 F.3d 995, 1005-1007 (6th Cir. 1999). In that case the Sixth Circuit held that a defendant police officer was not entitled to either absolute or qualified immunity for his non-testimonial acts when sued by persons he had arrested where he had fabricated probable cause for his seizure of those persons. The *Spurlock* case was brought under 42 U.S.C. §§ 1981 and 1983 after Spurlock and a co-plaintiff were acquitted. *Spurlock* is not a habeas corpus case. Whether Mr. Smith could successfully sue Lieutenant Schaefer would depend on whether he could first get his conviction reversed (See *Heck v. Humphrey,* 512 U.S. 477, 486-487(1994)) and then find some credible evidence that Schaefer planted the blood. But the fact that Lieutenant Schaefer would not have immunity for any of their nontestimonial acts which constituted fabricating evidence is of no help to Mr. Smith here because, as the court of appeals found, he has offered no credible evidence that Schaefer planted the blood.

To the extent that Mr. Smith is arguing here that there was no probable cause for his arrest and therefore no probable cause to obtain the shoe, he is arguing a Fourth Amendment matter. As the Report noted, Fourth Amendment claims cannot be heard in habeas corpus when the petitioner was given a full and fair opportunity to litigate that claim in the state courts, as Smith was.

Based on the foregoing analysis, it is again respectfully recommended that the Petition be

dismissed with prejudice. Because Petitioner's Motion to Allow Proper Exhibits (Doc. No. 19) is untimely, having been filed after recommendation on the merits, it is denied. Petitioner's Motion "to Re-Approve for An Agreed Statement of Facts to be Submitted" (Doc. No. 20) is denied. There is no proffered "agreed statement of facts." The documents attached to that Motion are not part of the record so far as Petitioner has shown. Furthermore, if these documents were not before the state court of appeals, this Court is precluded from considering them in deciding whether the state court's decision is objectively unreasonable. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01, 179 L. Ed. 2d 557 (2011).

December 2, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).