```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

Christopher Smith,              )
                                )
                   Petitioner,  ) Case No. 1:10-CV-00841
                                )
      vs.                       )
                                )
Warden, Lebanon Correctional    )
Institution,                    )
                                )
                   Respondent.  )

ORDER

This matter is before the Court on Petitioner Christopher Smith's petition for a writ of habeas corpus (Doc. No. 1), Magistrate Judge Merz's Report and Recommendation of November 10, 2011 (Doc. No. 17) recommending that Petitioner's petition be denied, and Petitioner's objections to the Report and Recommendation (Doc. No. 18).[1] For the reasons that follow, Petitioner's objections are not well-taken and are **OVERRULED**; the Court **ADOPTS** the Report and Recommendation; Petitioner's petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

I. Background

In 2008, the Hamilton County grand jury indicted Petitioner

---

[1] Judge Merz responded to Petitioner's objections in a December 2, 2011 Supplemental Report and Recommendation. Doc. No. 21. Petitioner responded with further objections on January 9, 2012. Doc. No. 23. The Court, however, will focus on the original Report and Recommendation and the Petitioner's first set of objections. Accordingly, the Supplemental Report and Recommendation and Petitioner's objections to it are **MOOT.**

with one count each of attempted murder, felonious assault, aggravated robbery, robbery, and having a weapon under disability. The evidence presented at trial showed that on June 9, 2008, Petitioner entered Lee's Famous Recipe restaurant in Springfield Township. He pointed a gun at the assistant manager, Kara Trieschman-Hooker, and demanded money. He forced Trieschman-Hooker to walk him back to the restaurant's office, where he grabbed money on the desk, shot Trieschman-Hooker in the face, and ran out of the restaurant.

A witness, Michael Jones, and his girlfriend, Heather Nunamaker, were walking in the vicinity of the robbery, when Petitioner jumped out of some bushes, looking panicky and fidgety. Petitioner told them not to go towards the restaurant, as there had been a shooting. The three individuals turned around and were walking together when they were stopped by a police officer and advised to return home. The police officer told Petitioner he wished to speak with him. As Jones and Nunamaker continued walking, they again encountered Petitioner, who ran up behind them and began walking with them. For a second time, a police officer stopped the group and advised them to return home. Jones called the police to report his encounter with Petitioner.

A third police officer, Clayton Smith, was in the vicinity and heard the description of the man Jones encountered. Smith noticed Petitioner, who matched the description, and stopped him.

Smith testified that Petitioner was evasive and nervous when talking with him. When Smith asked Petitioner where he was returning from, Petitioner stated "Wyoming Apartments." As there were no apartments by that name in the vicinity of the area, Smith became uneasy, and brought Petitioner in to see his Lieutenant, David Schaefer. Petitioner was taken to the police station, and when Schaefer noticed what he believed to be blood on Petitioner's shoes, the shoes were immediately collected. Forensics later matched the blood on Petitioner's shoes with Trieschman-Hooker.

Before trial, Petitioner moved to suppress the blood evidence from his shoes, as well as his statements to police, arguing his arrest was made without probable cause. The trial court denied the motion. Petitioner's defense at trial included the testimony of forensic expert Larry Dehaus, who stated that the blood found on Petitioner's shoes did not appear to be the result of spatter from a gunshot. Nonetheless, the jury found Petitioner guilty on all counts. The trial court merged the felonious assault count into the attempted murder count, and the robbery count into the aggravated robbery count. The trial court sentenced Petitioner to 28 years in prison on all counts.

Petitioner's direct appeal raised five assignments of error: 1) the trial court violated the Equal Protection Clause of the United States Constitution by ruling that the state had a race-

neutral reason for using a peremptory challenge on an African-American juror; 2) the trial court erred by overruling his motion to suppress evidence; 3) there was insufficient evidence to establish each and every element of the offenses beyond a reasonable doubt, and thus the conviction was contrary to law; 4) the conviction was against the manifest weight of the evidence; 5) and the conviction was contrary to law and to the Sixth Amendment of the United State's Constitution due to ineffective assistance of his trial counsel. Doc. No. 11-1, at PageID 115-17.

The Ohio Court of Appeals rejected each of Petitioner's assignments of error and affirmed his convictions and sentence. The appeals court ruled that: 1) the trial court's acceptance of the state's race-neutral explanation for the peremptory challenge, that the juror had a previous bad experience with a police officer, was not clearly erroneous; 2) the trial court's denial of the motion to suppress evidence was proper, as Petitioner was stopped and detained on the basis of reasonable suspicion; 3) the state did present sufficient evidence to support each element of Petitioner's convictions; 4) the jury did not lose its way when it convicted Petitioner, and thus his conviction was not against the manifest weight of the evidence; and 5) as Petitioner specified no examples of deficient conduct by his trial counsel, he did not demonstrate ineffective assistance. Doc. No. 11-1, at PageID 175-79. Petitioner appealed

to the Ohio Supreme Court, raising the same assignments of error. Doc. No. 11-1, at PageID 180. The Ohio Supreme Court denied further appeal. Doc. No. 11-1, at PageID 215. Petitioner then attempted to file a Ohio App. R. 26(B) motion with the Ohio Supreme Court on the grounds that his appellate counsel failed to raise allied offenses in his original appeal. Doc. No. 11-1, at PageID 216. This motion was denied. Doc. No. 11-1, at PageID 217.

In November 2010, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner did not raise specific assignments of error in his Petition, generally stating that his grounds for relief were allied offenses, ineffective assistance, and prosecutor misconduct. Doc. No. 1, at PageID 5. Petitioner's arguments are more fully stated in his Reply and two Supplemental Memoranda, where Petitioner argues 1) his conviction was against the manifest weight of the evidence and there was not sufficient evidence for his conviction, 2) he was convicted of allied offenses that should have been merged, 3) the state violated the Equal Protection Clause by exercising a peremptory challenge against an African-American juror, 4) evidence was seized from Petitioner in violation of his Fourth Amendment fights, 5) ineffective assistance of his trial and appellate counsel, and 6) improper conduct by the prosecutor.

In his Report and Recommendation, Judge Merz concluded that

Petitioner's assignments of error are without merit. Judge Merz concluded that there was sufficient evidence to convict Petitioner, noting that although Petitioner made numerous claims of witness perjury, it is ultimately the jury that determines the credibility of the witnesses. Furthermore, Petitioner had no explanation for Trieschman-Hooker's blood on his shoes, other than an accusation that the police planted it, an accusation that was not supported by any credible evidence. Judge Merz also observed that where a state provides a full and fair opportunity to litigate claims of illegally seized evidence, such claims are not available for habeas corpus relief. Additionally, Judge Merz noted the trial court did merge the allied offenses, and no other merger is required under Ohio law. Judge Merz found no deficient performance on the part of Petitioner's counsel at trial, and determined that none of the Prosecutor's conduct, as alleged by Petitioner, constituted misconduct. Finally, Judge Merz concluded that Petitioner failed to provide any evidence that the prosecutor used a peremptory challenge in a race-based manner. Judge Merz, therefore, recommended that Petitioner's habeas petition be denied. Additionally, Judge Merz recommended that this Court decline to issue a certificate of appealability and that this Court deny Petitioner leave to appeal <u>in forma pauperis</u>.

    Petitioner filed timely objections to Judge Merz's Report

and Recommendations. This Court reviews de novo those portions of the Report and Recommendation to which Petitioner filed timely objections. Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

In his objections, Petitioner argues that the testimony of his expert witness offered credible support to his claim that the blood on his shoe was planted by the police. Further, Petitioner argues that the state's selection of 11 white jurors shows discriminatory intent. Petitioner also contends that his arrest was made without probable cause.

## II. Standard of Review

A federal court may issue a writ of habeas corpus to correct an error in a state proceeding that resulted in Petitioner's confinement, if that proceeding was rendered fundamentally unfair by a violation of the Constitution or laws of the United States. Clemmons v. Sowders, 34 F. 3d 352, 354 (6th Cir. 1994); 28 U.S.C. § 2254(a).

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, the district court shall not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court, unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

7

>           established Federal law, as determined by the
>           Supreme Court of the United States; or
>
>     (2)   resulted in a decision that was based on an
>           unreasonable determination of the facts in light
>           of the evidence presented in the State court
>           proceeding.

28 U.S.C. § 2254(d).

A state-court opinion violates the "unreasonable application" clause of § 2254(d)(1) when "the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state-court opinion will also involve the "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." Seymour v. Walker, 224 F.3d 542, 549 (6th Cir. 2000). The Supreme Court stated that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. In defining the meaning of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable." Id. at 411.

### III. Analysis

Petitioner's objections are not well-taken and he, therefore, is not entitled to relief on any of the claims raised in his habeas petition.

### A. Sufficiency of the Evidence

Petitioner contends that the evidence presented at trial was not constitutionally sufficient to support his conviction. Specifically, Petitioner argues that the testimony of expert witness Larry Dehus offers credible support for his theory that the police planted the critical piece of evidence against him, Trieschman-Hooker's blood on his shoes.

A conviction where each element of the offense has not been proved beyond a reasonable doubt violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In re Winship, 397 U.S. 358, 364 (1970). In judging the sufficiency of the evidence used for conviction, a reviewing court does not reweigh the evidence or drawn its own inferences. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Instead, the court reviews all the evidence in the light most favorable to the prosecution, and determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. If there is conflicting evidence or conflicting inferences, the court must presume that the trier of the fact

resolved these conflicts in favor of the state, and must defer to that decision. Id. at 362.

When the sufficiency of the evidence is questioned in a habeas petition, the court must make an additional inquiry. The court must "determine whether the Ohio Court of Appeals itself was unreasonable in its conclusion that a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt based upon the evidence introduced at trial." Brown v. Konteh, 564 F.3d 191, 205 (6th Cir. 2009). Thus, there are two layers of deference for a habeas petition arguing the insufficiency of the evidence: deference to the trier of fact, and deference to the appellate court determination of the reasonableness of the conviction.

The Ohio Court of Appeals found that the state produced sufficient evidence for each element of the crimes of conviction: attempted murder, aggravated robbery, and having a weapon while under a disability. The court noted that Petitioner was stopped in the vicinity of the crime and had Trieschman-Hooker's blood on his shoes. Ultimately, the court maintained, it is the jury that makes the determination on the credibility of the witnesses.

In his objections, Petitioner makes extensive claims that various witnesses committed perjury when testifying at his trial and notes numerous inconsistencies in witness statements. Petitioner strongly relies on the testimony of his expert Larry Dehus, who stated that the blood on Petitioner's shoes did not

appear to be the result of bloodspatter after a gunshot, to support his theory that the police planted Trieschman-Hooker's blood on his shoes. However, as the Ohio Court of Appeals noted, it is the responsibility of the jury to resolve inconsistent or contradictory testimony, and to assess the credibility of each witness. See Jackson, 443 U.S. at 319. As Judge Merz concluded, in this case, the jury believed the witnesses for the state. Furthermore, contrary to Petitioner's assertions, the testimony of Dehus, his expert witness, does not offer any credible support for his theory that the police planted the blood on his shoes. Dehus simply stated that the blood did not *appear* to be the result of splatter from a gunshot; this in and of itself does not establish that the blood on Petitioner's shoes did not stem from the robbery, nor does it lead to a reasonable inference that the police planted the blood.

The Ohio Court of Appeals' conclusions, that the state presented sufficient evidence to convict Petitioner and that the manifest weight of the evidence supported Petitioner's convictions, were not objectively unreasonable, and thus this objection is overruled.

## B. Allied Offenses

Petitioner argues that pursuant to Ohio Revised Code §2941.25, the robbery and aggravated robbery offenses, as well as the attempted murder and felonious assault charges, should have

11

been merged as allied offenses of similar import. As Judge Merz observes, they were. At the end of trial, the trial court merged Petitioner's felonious assault count into the attempted murder count, and merged the robbery count into the aggravated robbery count. Doc. No 11-1, at PageID 108-09. The corresponding gun specifications were also merged. Doc. No. 11-1, at PageID 109. Thus, Petitioner was sentenced for three offenses: attempted murder, aggravated robbery, and having a weapon while under disability. Doc. No. 11-1, at PageID 108-09. None of the remaining offenses are allied offenses of similar import.

To the extent that Petitioner is raising a Double Jeopardy claim, through his citation of Blockburger, such a claim is unsuccessful. The "same elements" test provided in Blockburger asks "whether each offense contains an element not contained in the other." United States v. Dixon, 509 U.S. 688, 696 (1993); Blockburger v. United States, 284 U.S. 299 (1932). If there are no different elements between offenses, the Double Jeopardy rule bars additional punishment or prosecution. Dixon, 509 U.S. at 696. Each of the three offenses, attempted murder, aggravated robbery, and possessing a weapon while under disability, contains elements not in the other offenses. Thus, a conviction and subsequent sentence for all three offenses does not violate the Double Jeopardy rule.

Accordingly, this objection is overruled.

## C. Batson Claim

The Ohio Court of Appeals determined that the trial court did not erroneously accept a race-neutral explanation for the peremptory removal of prospective juror Madaris, an African-American man. Petitioner objects that the "real issue" is not simply the striking of juror Madaris, but the discriminatory jury selection procedures that created a jury of eleven whites and one African-American.

Batson claims present a mixed question of law and fact, and thus are examined under the "unreasonable application" prong of AEDPA. Braxton v. Gansheimer, 561 F.3d 453, 458 (6th Cir. 2009). Additionally, under a Batson claim, "the facts found by a state court are presumed to be correct, unless the petitioner rebuts the presumption by clear and convincing evidence." Lancaster v. Adams, 324 F.3d 423, 429 n. 1 (6th Cir. 2003). Trial courts must undertake a three step process to evaluate Batson claims. Braxton, 561 F.3d at 458. The opposing party must first make a prima facie showing of racial discrimination. Id. Then, the burden shifts to the party exercising the challenge to articulate a race-neutral reason for the challenge. Id. Finally, the opposing party must then show that the supposed race-neutral explanation is actually a pretext for a racial motivation. Id. at 459. The trial court must ultimately determine whether the opposing party has met its burden of demonstrating purposeful

discrimination. Id.

As Judge Merz noted, the state offered a plausible, race-neutral explanation for the peremptory challenge against juror Madaris: he had a previous bad experience with a police officer, and believed the police officer stopped him unjustly. Petitioner has failed to bring forth any evidence to show that this explanation was merely a pretext. Petitioner's objection that the selection of a jury with eleven white members shows discriminatory intent by the state is unfounded, as he has produced no evidence to show that the state used peremptory challenges to strike African-American jurors in a discriminatory fashion.

Accordingly, this objection is overruled.

### D. Fourth Amendment Violation

The Ohio Court of Appeals determined that the totality of the facts and circumstances surrounding the apprehension of Petitioner indicate there was probable cause to arrest him, and thus the trial court properly denied Petitioner's motions to suppress evidence stemming from the arrest. Petitioner objects that the officer arrested him without probable cause, and that he was arrested simply because he was in the vicinity of the crime.

As Judge Merz correctly observed, the United States Supreme Court ruled in Stone v. Powell, that where state prisoners are granted a full and fair opportunity to litigate Fourth Amendment

claims in state court, such claims cannot be the basis of habeas corpus relief. 428 U.S. 465 (1976). Stone requires two distinct inquiries. The first inquiry is whether state procedure, in the abstract, provides an opportunity for a full and fair litigation of Fourth Amendment claims. Riley v. Gray, 674 F.2d 522, 526 (6th Cir. 1982). Second, the court must determine whether a failure of the state procedure frustrated the Petitioner's presentation of their Fourth Amendment claims. Id. The Sixth Circuit, in Riley, has already determined that Ohio's procedure for presenting Fourth Amendment claims is adequate. Id. ("[Ohio] rules provide an adequate procedural mechanism for the litigation of fourth amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision."). Petitioner was able to fully and fairly present his Fourth Amendment claims. The trial court held a hearing on the Petitioner's motion to suppress. Doc. No. 11-1, at PageID 89. Additionally, Petitioner appealed this denial to the Ohio Court of Appeals, and its decision explicitly states why they overruled this assignment of error.

Petitioner's Fourth Amendment claims are not cognizable as a basis for federal habeas relief, and thus this objection is overruled.

### E. Ineffective Assistance of Counsel

The Ohio Court of Appeals overruled Petitioner's ineffective assistance of counsel claim, as Petitioner failed to specify examples of his trial counsel's deficiencies. In his habeas petition, Petitioner maintains that both his trial and appellate counsel were ineffective for failing to merge his allied offenses, failing to raise Trieschman-Hooker's inconsistent testimony on the color of the perpetrator's shoes, and failing to note that Petitioner's shoes were placed in a hallway out of view of the surveillance cameras, which Petitioner argues would have supported the implication that the police planted the blood on his shoes. Doc. No. 12, at PageID 236.

Claims of ineffective assistance of counsel are governed under Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a defendant satisfy two prongs: 1) that counsel's performance was deficient, and 2) that the deficient performance prejudiced the defense, such that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. 466 U.S. 687, 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Darden v. Wainwright, 477 U.S. 168, 186 (1986).

None of the conduct to which Petitioner objects rises to the level of ineffective assistance of counsel. As to the allied offenses claim, as noted above, the trial court merged all

16

possible allied offenses, and thus there was no deficiency in the counsel's failure to argue for more mergers. Additionally, even if counsel had pointed out the inconsistent testimony on the color of the shoes and that the shoes were left in the hallway outside of the range of surveillance cameras, there is not a reasonable probability that the result of the proceeding would have been different. The inconsistent statements on color of the perpetrator's shoes does not change the fact that Trieschman-Hooker's blood was found on the shoes. The fact that the shoes were left in the hallway without surveillance cameras simply goes to a speculative argument that the blood was planted on the shoes during that time, an argument that had no credible support during trial.

Accordingly, this objection is overruled.

### F. Prosecutorial Misconduct

In his habeas petition, Petitioner argues prosecutorial misconduct based on the prosecutor's failure, during the pre-trial motion to suppress, to identify all evidence that she intended to offer, improper criticism of defense expert Dehus by noting that he is not a member of the International Association of Bloodstain Pattern Analysts, and improper coaching of Trieschman-Hooker by showing her Petitioner's shoes.

On habeas review, the question of prosecutor misconduct is "whether the prosecutors' comments 'so infected the trial with

17

unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986), quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, (1972). To obtain habeas relief, Petitioner must show not only that the prosecutor's conduct was improper, but that it was "so flagrant as to warrant reversal." <u>Bates v. Bell</u>, 402 F.3d 635, 641 (6th Cir. 2005). None of conduct cited by Petitioner is improper, and even if it were, it certainly did not rise to the high level of flagrancy and impropriety required for reversal.

Accordingly, this objection is overruled.

## Conclusion

For the foregoing reasons, Petitioner's objections to Magistrate Judge Merz's Report and Recommendation are not well-taken and are **OVERRULED**. The Court **ADOPTS** the Report and Recommendation. Petitioner's application for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

A certificate of appealability will not issue with respect to this order because under the first prong of the applicable two-part standard established in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings. Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable jurists could not debate whether (or agree that) the petition

should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." Id. at 483-84. Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. See 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

With respect to any application by Petitioner to proceed on appeal in forma pauperis, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken in good faith. Therefore, Petitioner is **DENIED** leave to appeal in forma pauperis. See Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED**

Date February 14, 2012              s/Sandra S. Beckwith
                                    Sandra S. Beckwith
                                    Senior United States District Judge